Opinion issued January 28, 2010








                    





     



In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00302-CR




PABLO LOPEZ, Appellant

v.

THE STATE OF TEXAS, Appellee




On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause No. 1115181




O P I N I O N

          A jury convicted appellant, Pablo Lopez, of the first-degree felony offense of
aggravated sexual assault of a child.


 The jury assessed punishment at confinement
for 50 years. 
          In his sole issue, appellant contends that he was denied effective assistance of
counsel at trial because counsel (1) “failed to raise the provisions of [Article] 38.072
of the Code of Criminal Procedure and limit the amount of hearsay that could be
admitted” and (2) failed to object to inadmissible opinion testimony.



          We reverse and remand.
Background
          The complainant, B.R., who was 16 years old at the time of trial, testified that 
appellant, who was her step-father, began sexually abusing her when she was five
years old. B.R. testified that the abusive events continued until she reached the age
of twelve, when her mother, Marlena Solisa Espana, divorced appellant. Appellant
was charged with and convicted of a single act that occurred on or about July 1, 2001,
when B.R. was nine.
          Concerning the incident at issue, B.R. testified that when her mother was away
from home out shopping, appellant instructed B.R. to go into his room and disrobe. 
B.R. testified that appellant got on top of her and attempted to insert his “thing” into
her “private part,” referring to male and female sexual organs, respectively. B.R.
testified that it hurt very badly and that she begged him to stop. When he continued,
B.R. began kicking and scratching, and was able to extricate herself from underneath
appellant. B.R. ran from appellant, but he chased her around the house. B.R. fell,
and appellant caught her and began beating her. The struggle ended when B.R.’s
mother came home. B.R. did not report the incident to anyone at that time.
          In 2006, when B.R. was a sophomore in high school, she told a close friend
about her history with appellant. The friend reported the information to the friend’s
aunt, who called B.R.’s school counselor, Toni Sika.
          According to Sika, the aunt said that “[B.R.] had told her some things that were
upsetting and that some things had happened to [B.R.] that were inappropriate.” The
aunt did not offer any details. Sika called B.R. into her office. Sika testified that B.R.
was very emotional and told her that appellant had touched and fondled her, “had
pulled her panties down,” and that he promised to be kind to her in exchange for
“things.” Sika said that B.R. told her that the incidents began when B.R. was “around
four years old.” Sika reported the information to CPS.
          Claudia Mullin of the Harris County Children’s Assessment Center conducted
a videotaped interview of B.R. Mullin explained that her purpose during the
interview process is to assess the credibility of the child, and she explained certain
credibility factors. Mullin explained that, where there are multiple allegations of
sexual abuse, she seeks to establish the first and last acts. Mullin testified that she
used this method while interviewing B.R. and that B.R.’s “disclosure seemed
credible.” 
          According to Mullin’s testimony, the first incident B.R. could remember
occurred while B.R. was “either four or five.” B.R. remembered having gone into the
kitchen and asked appellant for something to eat. B.R. reported that appellant
responded, “You have to give me something first.” B.R. said that appellant “stood
her on a chair, pulled down her panties, pulled out his thing, . . . and started to touch
her down there in front.” 
          Concerning the incident at issue, B.R. reported to Mullin that appellant pulled
B.R. by the hair into his bedroom and insisted that they “were going to do it.” B.R.
told Mullin that appellant pushed her onto her mother’s bed, that he took off her
pants, and that he “didn’t put it all the way in, just halfway.” 
 
          Maria Benavides, B.R.’s mentor as part of a school program, testified that she
learned of B.R.’s allegations against appellant through Sika. Benavides called B.R.
and met with her. Benavides testified that B.R. was emotional as she recounted a
series of abusive events that had begun when B.R. was four or five years old. On the
first occasion in B.R.’s memory, appellant was in the kitchen cooking while her
mother was at the laundromat. B.R. asked him if she could have something to eat 
and he said, “Fine. What are you going to give me?” Appellant picked up B.R.,
placed her on a chair or table, removed her panties, and “rubbed his penis on her
vagina.” Benavides testified that B.R. said that this conduct happened “a lot” and that
she frequently had to “fight him off.” 
          Concerning the incident at issue, Benavides testified that B.R. said that, while
her mother was away at the store, appellant had gotten on top of her. B.R. pushed
him off, but he beat her very badly. Appellant told B.R.’s mother that he had
disciplined B.R. for failing to do her chores.
          Officer M. Parrie, of the Juvenile Sex Crimes Division of the Houston Police
Department, testified that he viewed B.R.’s videotaped interview but, as is customary,
he did not speak directly with B.R. Officer Parrie testified that B.R. stated during her
interview that Sika was the first person she had told about the incident. Officer Parrie
interviewed appellant and, based in part on the interview, arrested appellant. 
          Appellant testified


 at trial that he works six days per week from 6:00 a.m. to
6:00 p.m.; that B.R.’s mother does not drive and does not have a car; that he was
“never” left alone with B.R., or his other two daughters; and that B.R. had fabricated
the allegations.
          The jury found appellant guilty of aggravated sexual assault of a child and
assessed punishment at 50 years’ confinement. Appellant moved for the withdrawal
of his trial counsel, Robert Valles, whose representation is the subject of this appeal,
and for the appointment of appellate counsel, J.C. Castillo. Appellant’s motion was
granted. The trial court denied appellant’s motion for new trial. This appeal
followed. 
Ineffective Assistance of Counsel
          In his sole issue, appellant contends that he was denied his right to effective
assistance of counsel at trial because counsel (1) “failed to raise the provisions of
Section 38.072 of the Code of Criminal Procedure and limit the amount of hearsay
that could be admitted” and (2) failed to object to inadmissible opinion testimony.
A.      Standard of Review  
          Appellant is entitled to reasonably effective assistance of counsel. See U.S.
Const. amend. VI; Tex. Const. art. I, § 10. The right to counsel, however, does not
mean the right to errorless counsel. Robertson v. State, 187 S.W.3d 475, 483 (Tex.
Crim. App. 2006). To prove ineffective assistance of counsel, appellant must show
that (1) counsel’s performance fell below an objective standard of reasonableness and
(2) that there is a reasonable probability that the result of the proceeding would have
been different. Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S. Ct. 2052,
2064, 2068 (1984); Andrews v. State, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).
A “reasonable probability” is a probability sufficient to undermine confidence in the
outcome. Strickland, 466 U.S. at 694, 104 S. Ct. 2068. 
           To prevail, appellant must prove ineffective assistance by a preponderance of
the evidence and must overcome the strong presumption that counsel’s conduct falls
within the wide range of reasonably professional assistance or might reasonably be
considered sound trial strategy. See Robertson, 187 S.W.3d at 482–83; Gamble v.
State, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). A failure
to make a showing under either prong defeats a claim of ineffective assistance of
counsel. Rylander v. State, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003) (emphasis
added). 
          As the reviewing court, we look to the totality of the representation and to the
circumstances of the case, not to isolated errors. Robertson, 187 S.W.3d at 483–84.
We must consider the adequacy of assistance as viewed at the time of trial, not
through hindsight. Id. at 482–83. 
          Additionally, we cannot speculate as to the reasons supporting counsel’s
behavior. Bone v. State, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). Allegations of
ineffectiveness must be firmly founded in the record. Id. at 833 & n.13. Ordinarily,
the record on direct appeal is undeveloped and cannot adequately reflect the motives
behind trial counsel’s actions. Rylander, 101 S.W.3d at 110–11. In the absence of
evidence of counsel’s reasons for the challenged conduct, an appellate court should
not find deficient performance unless the conduct was so outrageous that no
competent attorney would have engaged in it. Goodspeed v. State, 187 S.W.3d 390,
392 (Tex. Crim. App. 2005). 
          In the rare cases in which the record on direct appeal is sufficient to show that
counsel’s performance was deficient, an appellate court should address the claim.
Robinson v. State, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000). An appellant may
prevail on an ineffective assistance claim by providing a record that affirmatively
demonstrates that counsel’s performance was not based on sound trial strategy. 
Mallet v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). If “no reasonable trial
strategy could justify the trial counsel’s conduct, counsel’s performance falls below
an objective standard of reasonableness as a matter of law, regardless of whether the
record adequately reflects the trial counsel’s subjective reasons for acting as [he]
did.” Andrews, 159 S.W.3d at 102. A single egregious error of omission or
commission by counsel has been held to constitute ineffective assistance, even in the
absence of a record setting forth counsel’s reasons for the challenged conduct.
Vasquez v. State, 830 S.W.2d 948, 950–51 (Tex. Crim. App. 1992); McKinny v. State,
76 S.W.3d 463, 470–71 (Tex. App.—Houston [1st Dist.] 2002, no pet.).
B.      Counsel’s Performance
          1.       Article 38.072 and Hearsay
          Appellant first contends that his trial counsel was ineffective because he “failed
to raise the provisions of Section 38.072 of the Code of Criminal Procedure and limit
the amount of hearsay that could be admitted.” 
          Generally, hearsay statements


 are inadmissible except as provided by statute
or other rule. Tex. R. Evid. 802; see Tex. R. Evid. 803 (providing exceptions). Texas
Code of Criminal Procedure article 38.072 provides a statutory exception that allows
the State to introduce outcry statements made by a child victim of certain offenses,
which would otherwise be considered inadmissible hearsay. See Act of May 27, 1985,
69th Leg., R.S., ch. 590, § 1, 1985 Tex. Gen. Laws 2222, 2222–23, amended by Act
of May 27, 2009, 81st Leg., R.S., ch. 710, § 1–2, 2009 Tex. Gen. Laws 1780,
1780–81 (current version at Tex. Code Crim. Proc. Ann. art. 38.072 § 1–2 (Vernon
Supp. 2009))


; see Martinez v. State, 178 S.W.3d 806, 810–11, n.14 (Tex. Crim. App.
2005). Article 38.072 applies to, inter alia, the prosecution of assaultive offenses
under Penal Code section 22.021 committed against children twelve years of age and
younger, as here. See Act of May 27, 1985, 69th Leg., R.S., ch. 590, § 1, 1985 Tex.
Gen. Laws 2222, 2222–23 (amended 2009).


 Article 38.072 allows statements of the
child victim describing the alleged offense to be admitted through an “outcry
witness,” that is, the first adult “to whom the child makes a statement that in some
discernible manner describes the alleged offense.” See Act of May 27, 1985, 69th
Leg., R.S., ch. 590, § 1, 1985 Tex. Gen. Laws 2222, 2222–23 (amended 2009)
(current version at Tex. Code Crim. Proc. Ann. art. 38.072 § 2(a) (Vernon Supp.
2009)); Garcia v. State, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990) (explaining that
statement must be “more than words which give a general allusion that something in
the area of child abuse was going on”). However, testimony from more than one
outcry witness may be admissible under article 38.072 if the witnesses describe
different events and do not merely repeat the same event as related to them by the
victim. Broderick v. State, 35 S.W.3d 67, 73–74 (Tex. App.—Texarkana 2000, pet.
ref’d). 
          Invoking the statutory exception, however, requires notice and a hearing. Long
v. State, 800 S.W.2d 545, 546 (Tex. Crim. App. 1990). Pursuant to article 38.072, a
statement is not inadmissible as hearsay if (1) the party intending to offer the
statement timely notifies the adverse party of its intention to do so, and provides the
name of the witness and a summary of the statement; (2) the trial court finds, in a
hearing conducted outside the presence of the jury, that the statement is reliable based
on the time, content, and circumstances of the statement; and (3) the child testifies or
is available to testify at the proceeding. See Tex. Code Crim. Proc. Ann. art.
38.072, § 2(b) (Vernon 2009).
          Here, the record shows that the State gave a “Notice of Intention to Use Child
Abuse Victim’s Hearsay Statement.” The Notice states that the State intended to
offer B.R.’s statements though Maria Benavides and Claudia Mullin, and includes a
summary of their statements. At trial, the State presented the testimony of Benavides
and Mullin, as well as that of Sika, the school counselor, without a defense objection.



The testimony of Benavides, Mullin, and Sika constituted inadmissible hearsay. 
          First, the record before us does not indicate that an article 38.072 hearing was
requested or conducted. Appellant contends that “[n]o hearing was ever requested
by trial counsel,” and that “[t]he judge did not make a determination . . . as required
by Texas Code of Criminal Procedure, Article 38.072”; the State responds that no
hearing was conducted.


 The requirements of article 38.072 are mandatory. Long,
800 S.W.2d at 547; Duncan v. State, 95 S.W.3d 669, 671 (Tex. App.—Houston [1st
Dist.] 2002, pet. ref’d). When no hearing is conducted, the statutory requirements
have not been met, the exception is not invoked, and the testimony constitutes
inadmissible hearsay. See Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(2);
Dorado v. State, 843 S.W.2d 37, 38 (Tex. Crim. App. 1992). 
          Second, each of the witnesses testified concerning B.R.’s statements regarding
the same event—the alleged offense.


 Sika, the school counselor, testified that B.R.
told her that appellant had touched and fondled her, “had pulled her panties down,”
and that he promised to be kind to her in exchange for “things.” Mullin, of CAC,
testified that B.R. reported to her that appellant had pulled her by the hair into his
bedroom and had insisted that they “were going to do it.” B.R. told Mullin that
appellant pushed her onto her mother’s bed, that he took off her pants, and that he
“didn’t put it all the way in, just halfway.” Benavides testified that B.R. told her that,
while her mother was away at the store, appellant had gotten on top of her. B.R. had
pushed him off, but appellant beat her very badly. Testimony from more than one
outcry witness is not admissible under article 38.072 when, as here, the witnesses
merely repeat the same event as related to them by the victim. Broderick, 35 S.W.3d
at 73.
          Moreover, the testimonies of Sika, Mullin, and Benavides constituted improper
bolstering of B.R.’s testimony. See Farris v. State, 643 S.W.2d 694, 697 (Tex. 
Crim. App. 1982). Bolstering generally refers to evidence that improperly supports
the testimony of an unimpeached witness or adds credence or weight to prior
evidence introduced by the same party. State v. Balderas, 915 S.W.2d 913, 919 (Tex.
App.—Houston [1st Dist.] 1996, pet. ref’d); see Rivas v. State, 275 S.W.3d 880, 886
& n.3 (Tex. Crim. App. 2009) (explaining that “[w]hile the term ‘bolstering’ is slowly
dying as an objection on its face, it has not yet expired, despite the fact that the term
itself failed to survive the adoption of the Rules” and indicating that “bolstering” has
ties to Texas Rule of Evidence 613(c), which involves prior consistent statements and
reiterates principles of hearsay). Bolstering occurs when the testimony’s sole purpose
is to enhance the credibility of a witness or source of evidence, without substantively
contributing “to make the existence of [a] fact that is of consequence to the
determination of the action more or less probable than it would be without the
evidence.” Cohn v. State, 849 S.W.2d 817, 819–20 (Tex. Crim. App. 1993). Here,
although counsel cross-examined B.R. at trial, counsel focused his questions on
B.R.’s relationship with her mother. Each witness’s rendition of the facts, as told to
them by B.R., served to add credence or weight to B.R.’s testimony and did not
substantively contribute toward making “the existence of [a] fact that is of
consequence to the determination of the action more or less probable than it would
be without the evidence.” See id. 
          Because the only issue at trial was B.R.’s credibility, trial counsel’s failure to
object to such extensive improper testimony can only be characterized as falling
below an objective standard of reasonableness. See Andrews, 159 S.W.3d at 101;
Vasquez, 830 S.W.2d at 950–51; McKinny, 76 S.W.3d at 470–71. 
          We recognize that the record is silent regarding trial counsel’s reasons for
allowing the State to present the hearsay testimony of multiple witnesses concerning
the alleged offense, without an article 38.072 hearing. These contentions lie outside
the scope of the issues appellant raised in his motion for new trial. Notwithstanding,
we conclude that this is one of those cases in which the record clearly reflects that
counsel’s performance fell below an objective standard of reasonableness.” See
Andrews, 159 S.W.3d at 102 (concluding that if “no reasonable trial strategy could
justify the trial counsel’s conduct, counsel’s performance falls below an objective
standard of reasonableness as a matter of law, regardless of whether the record
adequately reflects the trial counsel’s subjective reasons for acting as [he] did”).
          We also recognize that this court has previously concluded that a failure to
object to outcry testimony by multiple witnesses can constitute plausible strategy. 
Vega v. State, No. 01-05-00358, 2006 WL 407821, at *3 (Tex. App.—Houston [1st
Dist.] Feb. 23, 2006, pet. ref’d) (mem. op., not designated for publication). We did
so, however, under circumstances not present in this case. 
          In Vega, three outcry witnesses were permitted to testify at trial, without
objection by defense counsel. Id. at *1. On appeal, appellant contended that his
counsel was ineffective for having failed to object. Id. We concluded that the record
demonstrated that there were “two reasons that counsel may have chosen not to object
to the testimony.” Id. at *3. First, “counsel may have concluded that his attack on
[the child complainant’s] credibility through cross-examination allowed the State to
introduce the [outcry witness testimony] to show a prior consistent statement.” Id. 
Second, counsel had “relied heavily” on the child complainant having initially told
the three witnesses that someone other than appellant had committed the sexual
assault at issue. Id. We concluded, “Under these circumstances, we cannot say that
counsel’s failure to challenge the outcry statements could not have been a plausible
trial strategy.” Id. at *4 (emphasis added). 
          The instant case is distinguishable from Vega in that, here, as discussed above,
counsel did not attack B.R.’s credibility during cross-examination and B.R. never
wavered in her testimony or in her allegation that appellant was the perpetrator. 
Under these circumstances, we can glean no sound trial strategy from defense
counsel’s failure to object to the extensive inadmissible testimony of the multiple
outcry witnesses when the only issue at trial was the credibility of the complainant. 
See Andrews, 159 S.W.3d at 101–02. We conclude that, even if allowing extensive,
inadmissible testimony to come in without objection constituted counsel’s trial
strategy, it cannot reasonably be considered sound trial strategy. See Robertson, 187
S.W.3d at 482–83 (stating that, to prevail, appellant must prove ineffective assistance
by preponderance of evidence and must overcome strong presumption that counsel’s
conduct falls within the wide range of reasonably professional assistance or might
reasonably be considered sound trial strategy). We hold that counsel’s performance
was deficient.
          2.       Opinion testimony
          Next, appellant contends that his trial counsel was ineffective because he failed
to object to opinion testimony by Officer Parrie and by Mullin that B.R. was credible. 
          “It is generally improper for a witness to offer a direct opinion as to the
truthfulness of another witness and such opinion is therefore inadmissible evidence.”
Blackwell v. State, 193 S.W.3d 1, 21 (Tex. App.—Houston [1st Dist.] 2006, pet.
ref’d) (citing Schutz v. State, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997)). “A direct
opinion on the truthfulness of the child” is inadmissible. Yount v. State, 872 S.W.2d
706, 708 (Tex. Crim. App. 1993); Sessums v. State, 129 S.W.3d 242, 247 (Tex.
App.—Texarkana 2004, pet. ref’d). Although an expert may testify to behaviors and
traits that might constitute indicia of manipulation, Schultz, 957 S.W.2d at 59, or that
a child exhibits behavioral characteristics that have been empirically shown to be
common among children who have been abused, Perez v. State, 113 S.W.3d 819, 832
(Tex. App.—Austin 2003, pet. ref’d), a direct comment on a complainant’s
“truthfulness” is “absolutely inadmissible.” Sessums, 129 S.W.3d at 247. This rule
applies to expert and to lay witness testimony. Fisher v. State, 121 S.W.3d 38, 41–42
(Tex. App.—San Antonio 2003, pet. ref’d). This type of testimony is inadmissible
because it does more than “assist the trier of fact to understand the evidence or to
determine a fact in issue”; it decides an issue for the jury. Yount, 872 S.W.2d at 709.
          Specifically, appellant complains of the following testimony by Officer Parrie:
          [Officer Parrie]:               The statements [B.R.] gave to Ms. Benavides and
the statements she gave to Ms. Sika, there were
details that she gave that I thought lend credence to
what [B.R.] was saying.
          [Defense Counsel]:          Could you share with us what those details were?
          [Officer Parrie]:               I know one of the details was that she talked about
when she was five years old and the defendant made
her stand on a chair and, you know, had her lower
her pants and then digitally penetrated her.



(Emphasis added.) 

          Officer Parrie’s testimony, which specifically relates facts concerning the
incident when B.R. was five, clearly relates the content of the out-of-court statement.
Officer Parrie testified that these details, in his opinion, “len[t] credence” to B.R.’s
testimony. Hence, Officer Parrie’s testimony constituted a direct opinion on the
truthfulness of B.R., which constituted inadmissible evidence. See Yount, 872
S.W.2d at 708; Sessums, 129 S.W.3d at 247.

          Appellant also complains that Mullin was permitted to testify that B.R. was
“very credible.” The record shows that Mullin testified during direct examination, in
relevant part, as follows:

          [State]:        And did [B.R.’s] disclosure seem valid based on the factors that
you have just described to the jury that you consider when
determining the validity of disclosure?
          [Mullin]:      Her disclosure seemed very credible.
          [State]:        And what was it about her disclosure that seemed credible to you?
          [Mullin]:      The way she told her story. She was telling it about something
that did happen. She described—especially the first incident that
she remembered, she described body positions and, you know,
various things happening that, again, she put—she put me in a
room, and I was in the room visualizing what was going on based
on the detail that she was able to give.

(Emphasis added.) Like that of Officer Parrie, the testimony of Mullin constituted a
direct opinion on the truthfulness of B.R., which was inadmissible. See Yount, 872
S.W.2d at 708; Sessums, 129 S.W.3d at 247.                     

          In Lane v. State, the appellant contended that his counsel was ineffective for
having failed to properly challenge opinion testimony concerning the truthfulness of
the child complainant. 257 S.W.3d 22, 26 (Tex. App.—Houston [14th Dist.] 2008,
pet. ref’d). There, a children’s assessment center representative testified that false
accusations are “extremely rare,” are “a rare occurrence,” and that children “do not
make—tend to make false accusations.” Id. at 24–25. Another representative from
the center testified that “in her opinion formed after counseling [the child
complainant] . . . , [the child complainant] had post-traumatic stress disorder caused
by childhood sexual abuse.” Id. at 25. 

          The Lane court reasoned that, because jurors must decide the credibility of the
parties, opinions on the truthfulness of a child complainant’s allegations or that a
class of persons to which the complainant belongs is truthful, are prohibited. Id. at
27 (citing Yount, 872 S.W.2d at 708, 710–12). Testimony that false accusations of
childhood sexual assault are very rare had the effect of telling the jury they could
believe the child’s testimony. Id. Testimony that it had been determined from
counseling sessions that the child had been sexually assaulted constituted direct
testimony that the complainant was being truthful. Id. Such testimony is prohibited.
Id.

          The Lane court concluded that the record on direct appeal was sufficient to
determine whether appellant’s trial counsel’s performance was deficient. Id. The
court further concluded that, even though there was nothing in the record explaining
counsel’s strategy for allowing the testimony into evidence, “there was no
conceivable strategy or tactic that would justify allowing this inadmissible testimony
in front of the jury.” Id. at 27. The court held that counsel’s performance was
deficient. Id. at 28. 

          Here, the sole issue at trial was the credibility of B.R. We conclude that, as did
the court in Lane, although there is nothing in the record explaining counsel’s
strategy for allowing into evidence direct testimony by Parrie and by Mullin
regarding B.R.’s truthfulness, there is no conceivable strategy or tactic that would
justify allowing such inadmissible testimony in front of the jury. See id.at 27–28;
Garcia v. State, 712 S.W.2d 249, 253 (Tex. App.—El Paso 1986, pet. ref’d)
(concluding that failure to enter objection to testimony by detective and child
protective services officer concerning their opinions as to truthfulness of child
complainant “clearly was ineffective assistance”). We hold that counsel’s
performance was deficient.

C.      Prejudice

          Having determined that counsel’s performance at trial was deficient, we
consider whether there is a reasonable probability that the result of the proceeding
would have been different. See Strickland, 466 U.S. at 687, 694, 104 S. Ct. at 2064,
2068; Andrews, 159 S.W.3d at 101. A “reasonable probability” is a probability
sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694, 104
S. Ct. 2068. 

          Here, the record shows that Sika, Mullin, and Benavides were permitted to
testify extensively at trial, without objection by counsel, concerning B.R.’s statements
to each regarding the alleged offense. The State focused heavily on such testimony
throughout its closing argument. In addition, Officer Parrie and Mullin were
permitted to testify, without objection, that they each believed that B.R. was truthful. 
The only other testimony presented by the State at trial was that of B.R. and that of
Dr. L. Thompson, Jr., of the CAC. Dr. Thompson testified only in general terms and
not specifically about B.R. 

          In sum, the jury was exposed to a barrage of inadmissible testimony concerning
B.R.’s credibility, when the sole issue at trial was her credibility. See Miller v. State,
757 S.W.2d 880, 884 (Tex. App.—Dallas 1988, pet. ref’d) (concluding that failing
to object to “extensive, inadmissible testimony concerning the only real issue at
trial—complainant’s credibility” results in denying appellant effective assistance of
counsel). We can only reasonably conclude that the testimony of B.R. was bolstered
immeasurably by the inadmissible testimony of three outcry witnesses, which
included a school counselor and a CAC representative, and that of Officer Parrie and
Mullin. See Farris, 643 S.W.2d at 697 (concluding, “It would be unreasonable not to
conclude that the testimony of the small children was bolstered immeasurably by
testimony that they were utterly incapable of fantasizing about [the conduct at
issue].”). We conclude that appellant has met his burden to show that he was
prejudiced by the deficiency in counsel’s performance. See Strickland, 466 U.S. at
687, 694, 104 S. Ct. at 2064, 2068; Andrews, 159 S.W.3d at 101. 

 
          After reviewing the totality of defense counsel’s representation, we conclude
that appellant has met his burden under Strickland to show that his counsel was
ineffective. 

          Accordingly, we sustain appellant’s sole issue.

Conclusion

          We reverse the trial court’s judgment and remand for further proceedings.









                                                             Laura Carter Higley

                                                             Justice



Panel consists of Justices Jennings, Higley, and Duggan.






Publish. See Tex. R. App. P. 47.2(b).